IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **MICHAEL S. LEFKOWITZ, M.D.,** : <br> : <br> : <br> **Plaintiff,** : <br> : <br> v. : <br> : <br> **MARC J. ACKERMAN, PH.D., et. al,** : <br> : <br> **Defendants.** : | Case No. 2:16-cv-00624 <br><br> JUDGE ALGENON L. MARBLEY <br><br> Magistrate Judge Deavers |

## OPINION & ORDER

This matter is before the Court on Defendants' Dr. Marc J. Ackerman and Dr. Colleen Drosdeck, Motion for Judgment on the Pleadings. (Doc. 7.) For the following reasons, the Court **GRANTS** Defendant's Motion for Judgment on the Pleadings. This case is hereby **DISMISSED** in its entirety.

### I. BACKGROUND

This case stems from a domestic dispute related to a shared parenting plan for Plaintiff's children. As part of the proceeding, Plaintiff's ex-wife hired forensic psychologist Dr. Marc Ackerman to examine Plaintiff. Dr. Ackerman was not licensed to perform full-time forensic psychology services in Ohio, but he did obtain a Nonresident 30-Day Permit ("Permit") from the State Board of Psychology of Ohio ("Board") to perform these services in connection with Plaintiff's domestic dispute. In support of his application for this Permit, Dr. Ackerman represented that "he would personally perform the forensic psychology services for which he was requesting the [permit.]" (Compl., Doc. 1, at ¶ 14.) He did not inform the Board that "significant portions of the forensic psychology services were to be performed by a colleague and/or supervisee who was not licensed in Ohio." (*Id.*)

1

In December 2013, the Board notified Dr. Ackerman that it had approved his Permit. (*Id.* ¶ 16.) According to the complaint, this notification stated that the Permit "does **not** include any unlicensed supervisee brought in from your home state." (*Id.*) Dr. Ackerman thereafter represented to counsel in the domestic dispute that he was permitted to perform the examination of Plaintiff. Counsel informed Plaintiff of these representations, and Plaintiff relied upon them in agreeing to submit to the examination. Dr. Ackerman did *not* inform counsel of his intent for a colleague unlicensed in Ohio to assist him in this examination. (*Id.* ¶¶ 17-18.)

When Plaintiff showed up to the exam, Dr. Ackerman introduced him to a subordinate, Dr. Drosdeck. (*Id.* ¶¶ 22, 26.) Both doctors represented to Plaintiff that Dr. Drosdeck was a licensed psychologist authorized to practice in Ohio. (*Id.* ¶ 22.) Both doctors knew, or should have known, that she was not, and they made these representations to induce Plaintiff to submit to the testing. (*Id.* ¶¶ 25, 29.) Plaintiff submitted to the examination in reliance on these representations. (*Id.* ¶ 23.)

During the testing, Dr. Drosdeck allegedly used "improper and subjective testing methods such as the Rorschach Test, which is no longer generally accepted as valid and reliable in the field of forensic psychology." (*Id.* ¶ 27.) Dr. Ackerman then wrote a report based on Dr. Drosdeck's testing and represented to the guardian *ad litem* in the case that he had performed his own testing and that the findings were his own. (*Id.* ¶ 30.) Dr. Ackerman made this statement to conceal Dr. Drosdeck's involvement. (*Id.* ¶ 32.)

Plaintiff hired his own forensic psychologist, Dr. Darnall, who corresponded (from Ohio) with Dr. Ackerman (in Wisconsin) regarding a joint report. (*Id.* ¶¶ 33-34.) Dr. Ackerman represented to Dr. Darnall that Dr. Ackerman had conducted his own testing. (*Id.* ¶¶ 35, 37.) Without revealing the involvement of Dr. Drosdeck, Dr. Ackerman convinced Dr. Darnall to

adopt the report findings. (*Id.* ¶ 38.) The report contained the statement that each doctor (Ackerman and Darnell) did his own testing. (*Id.* ¶ 44.) Dr. Ackerman submitted this joint report to the guardian *ad litem* in February 2014, and the guardian *ad litem* "relied upon Dr. Ackerman's implied misrepresentation that the testing was done by individuals with permission from the Psychology Board to do so and Dr. Ackerman's express misrepresentation that he had performed his own testing[.]" (*Id.* ¶¶ 40, 44.) The magistrate presiding over the domestic dispute also relied on these misrepresentations. (*Id.* ¶ 45.) She made a decision in November 2014 that was adverse to Plaintiff, which caused him to suffer damages "in the form of lost time with his children, an adverse impact upon his legal interests, lost earnings and unnecessary legal costs and expenses." (*Id.* ¶ 46.)

On June 29, 2016, Plaintiff brought this complaint against Doctors Ackerman and Drosdeck, as well as North Shore Psychotherapy Associates. The parties have since dismissed North Shore Psychotherapy Associates from the case. (Doc. 15.) Dr. Lefkowitz sued Doctors Ackerman and Drosdeck for a civil violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") based on the predicate acts of mail and wire fraud, as well as for negligence and fraud. (Doc. 1 at ¶¶ 47-57, 65-72.) He also sued Dr. Ackerman for negligent hiring and supervision. (*Id.* ¶¶ 58-64.)

Defendants answered the complaint on August 16, 2016 (Doc. 2), and moved for judgment on the pleadings on December 1, 2016. (Doc. 7.) This motion is fully briefed and is ripe for review.

## II.     STANDARD OF REVIEW

The Court evaluates a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) in the same manner as it reviews a motion for failure to state a claim under

3

Federal Rule of Civil Procedure 12(b)(6). *Vickers v. Fairfield Medical Center*, 453 F.3d 757, 761 (6th Cir. 2006). Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). Thus, the Court "must construe the complaint in the light most favorable to the plaintiff" and "accept all well-pled factual allegations as true[.]" *Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 790 (6th Cir. 2012). If more than one inference may be drawn from an allegation, the Court must resolve the conflict in favor of the plaintiff. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). The Court cannot dismiss a complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.*

Generally, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The allegations need not be detailed but must "give the defendant fair notice of what the claim is, and the grounds upon which it rests." *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). A complaint's factual allegations "must be enough to raise a right to relief above the speculative level," and must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A claim is plausible when it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court is not required to accept as true mere legal conclusions unsupported by factual allegations. *Id.* (citing *Twombly*, 550 U.S. at 555).

Plaintiff's claims that sound in fraud must also satisfy Federal Rule of Civil Procedure 9(b), which requires that "the circumstances constituting fraud … be stated with particularity."

4

*Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003) (citing Fed. R. Civ. P. 9(b)). This particularity requirement "reflects the rulemakers' additional understanding that, in cases involving fraud and mistake, a more specific form of notice is necessary to permit a defendant to draft a responsive pleading." *United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008) (internal quotation marks omitted). To satisfy Rule 9(b), a plaintiff must "allege the time, place, and content of the alleged misrepresentation" as well as "the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Bennett v. MIS Corp.*, 607 F.3d 1076, 1100 (6th Cir. 2010) (internal citations omitted).

### III.  ANALYSIS

Defendant seeks to dismiss the complaint based on several alleged deficiencies. The parties also seek the Court's review of certain documents outside the pleadings. The Court addresses whether it may consider these documents and then turns to Defendants' substantive arguments.

#### A. Considering Materials Outside the Pleadings

Defendants ask the Court to consider the November 13, 2014 decision of the magistrate and the February 11, 2014 joint report prepared by Doctors Ackerman and Darnall. Plaintiff asks the Court to consider an August 20, 2015 letter from Ohio Board of Psychology Investigator Amanda Danko to Dr. Ackerman notifying him that he violated the rules of the Ohio Board of Psychology by allowing Dr. Drosdeck to conduct testing related to this case without obtaining a temporary license for her.

Generally, "matters outside the pleadings may not be considered in ruling on a 12(b)(6) motion to dismiss unless the motion is converted to one for summary judgment under Fed. R. Civ. P. 56." *In re Fair Fin. Co.*, 834 F.3d 651, 656 n.1 (6th Cir. 2016) (internal quotation omitted). If "a document is referred to in the pleadings and is integral to the claims, [however,]

5

it may be considered without converting a motion to dismiss into one for summary judgment." *Id.*, citing *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007). *See also Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997). Put another way, if the matters outside the pleadings "simply fill[] in the contours and details of the plaintiff's complaint, and add[] nothing new," then the Court may consider them. *Yeary v. Goodwill Indus.-Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997).

The crux of Plaintiff's complaint is that Dr. Ackerman and Dr. Drosdeck misrepresented Dr. Drosdeck's licensure to practice forensic psychology in Ohio. These misrepresentations, according to the complaint, led to a fraudulent joint report containing the same misrepresentations, and an adverse decision that relied on the report. Defendant asks the Court to consider the joint report and the adverse decision, which the Court finds to be "referred to in the pleadings and [] integral to the claims." *In re Fair Fin. Co.*, 834 F.3d at 656 n.1.

Defendants ask the Court to take judicial notice of the opinions contained in the documents in addition to the existence of the documents themselves. The Sixth Circuit has noted with approval, however, cases in which courts take judicial notice of documents only "for the fact of the documents' existence, and not for the truth of the matters asserted therein." *Stafford v. Jewelers Mut. Ins. Co*., 554 F. App'x 360, 369 (6th Cir. 2014) (citing *Passa v. City of Columbus,* 123 F. App'x 694, 697 (6th Cir.2005)). The majority of these cases "which do not allow a court to take judicial notice of the contents of a public record do so because there is no way for an opposing party, prior to the issuance of the court's decision, to register his or her disagreement with the facts in the document of which the court was taking notice." *Id.* Therefore, "in order to preserve a party's right to a fair hearing, a court . . . must only take judicial notice of facts which are not subject to reasonable dispute." *Id.* The Court will take

judicial notice of the joint report and the adverse decision, but only to the extent of their existence and the facts not subject to reasonable dispute.

As for Plaintiff's request that the Court take judicial notice of the August 20, 2015 letter, this letter neither was referred to in the pleadings nor was integral to Plaintiff's claims, which stem from a magistrate judge decision made several months earlier. Contrary to Plaintiff's assertion, it does not "simply fill[] in the contours and details of the plaintiff's complaint, and add[] nothing new." *Yeary*, 107 F.3d at 445. Taking all reasonable inferences for Plaintiff, however, as the Court must, Plaintiff's complaint establishes what the letter would—that Defendants' actions were contrary to the rules of the Board.

## B. All of Plaintiff's Claims Fail for Lack of Proximate Causation

Civil RICO, fraud, negligence, and negligent hiring and supervision claims all contain the element of proximate causation:

***Civil RICO.*** To survive a motion for judgment on the pleadings for a Civil RICO claim, Plaintiff must sufficiently allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity," as well as **that predicate acts were the "but for" and proximate cause of his injuries.** *Heinrich v. Waiting Angels Adoption Servs, Inc.*, 668 F.3d 393, 403–05 (6th Cir. 2012) (quoting *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 (1985); *Holmes v. Sec. Investor Prot. Corp.,* 503 U.S. 258, 268 (1992)) (emphasis added).

***Fraud.*** The elements of fraud in Ohio are: "(1) a representation (or concealment of a fact when there is a duty to disclose) (2) that is material to the transaction at hand, (3) made falsely, with knowledge of its falsity or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, and (4) with intent to mislead another into relying upon it, (5) justifiable reliance, and (6) **resulting injury proximately caused by the reliance**." *Volbers-Klarich v. Middletown Mgt., Inc.*, 929 N.E.2d 434, 440 (Ohio 2010) (emphasis added).

7

A fraud claim carries the additional burden of "alleg[ing] the time, place, and content of the alleged misrepresentation" as well as "the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Bennett*, 607 F.3d at 1100.

*Negligence*. A negligence action, in Ohio, requires a showing of "the existence of a duty, a breach of the duty, and an **injury resulting proximately therefrom**." *Menifee v. Ohio Welding Prods, Inc*., 472 N.E.2d 707, 710 (Ohio 1984) (emphasis added).

*Negligent Hiring and Supervision.* To state a claim for negligent hiring and supervision, a plaintiff must properly allege: "(1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act causing the plaintiff's injuries; and (5) the employer's negligence in hiring or supervising the employee as the **proximate cause of the plaintiff's injuries**." *Ford v. Brooks*, 2012 -Ohio- 943, ¶ 22 (Ohio App. 10 Dist. 2012) (emphasis added).

Proximate causation requires a showing of "some direct relation between the injury asserted and the injurious conduct alleged." *Holmes v. Sec. Investor Prot. Corp.,* 503 U.S. 258, 268 (1992). Although *Holmes* is a RICO case, the Sixth Circuit has made clear that "*Holmes* is the seminal United States Supreme Court decision that discusses the directness requirement [of proximate cause], and the Ohio Supreme Court has adopted the *Holmes* Court's proximate cause analysis." *City of Cleveland v. Ameriquest Mort. Sec., Inc.*, 615 F.3d 496, 503 (6th Cir. 2010) (citing *Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1148-49 (2002)). Therefore, the directness analysis in *Holmes* applies both to Plaintiff's RICO and state law claims.[1]

---

[1] The Court assesses state law claims as it believes the Ohio Supreme Court would. *City of Cleveland*, 615 F.3d at 504. Because federal and Ohio law align on this point, and the Ohio Supreme Court has not indicated that it would treat this fact scenario under a different rubric, the Court assesses both RICO and the state law claims together. *See id.*

While assessing the existence of a "direct" relation is fact-intensive, the following concerns inform the inquiry:

> First, the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors. ***
>
> Second, quite apart from problems of proving factual causation, recognizing claims of the indirectly injured would force courts to adopt complicated rules apportioning damages among plaintiffs removed at different levels of injury from the violative acts, to obviate the risk of multiple recoveries. ***
>
> And, finally, the need to grapple with these problems is simply unjustified by the general interest in deterring injurious conduct, since directly injured victims can generally be counted on to vindicate the law as private attorneys general, without any of the problems attendant upon suits by plaintiffs injured more remotely.

*Holmes*, 503 U.S. at 269–70 (internal citations omitted). While all three factors are relevant to the proximate cause determination, they are not all required for remoteness to bar recovery. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 459 (2006) (recovery barred by proximate cause despite inapplicability of second factor). If a link is "'too remote,' 'purely contingent' or 'indirect[,]'" it does not satisfy proximate cause. *Hemi Group, LLC v. City of New York, N.Y.*, 559 U.S. 1, 9 (2010). In *Holmes*, the insurer of two securities broker-dealers sued several defendants for conspiring fraudulently to manipulate stocks. 503 U.S. at 261-62. This manipulation caused the broker-dealers to become insolvent and the insurer to have to pay their debts. *Id.* The Supreme Court found proximate cause to be lacking because the insurer's injury was too remote from the alleged conspiracy fraudulently to manipulate stocks. *Id.* at 273-74.

In this case, Defendants focus on the substance of the joint report and the magistrate judge's decision to illustrate that Plaintiff fails to allege proximate causation for his RICO and fraud claims. (Doc. 7 at 12-14; Doc. 13 at 7-9.) But implicit in Defendants' arguments is the basic issue with Plaintiff's complaint—that Plaintiff's causal theories are simply too remote.

9

This is true not just of Plaintiff's RICO and fraud claims, but also his negligence and negligent hiring and supervision claims.[2]

In his RICO and fraud claims, Plaintiff attempts to link a misrepresentation about Dr. Drosdeck's licensure to practice forensic psychology in Ohio to an adverse decision by a magistrate. To do so, his theory takes the following steps:[3]

1. Dr. Ackerman applied for and received a temporary permit to practice forensic psychology in the state of Ohio, on the misrepresentation and requirement that he would perform his own work. He got this permit in part to examine Dr. Lefkowitz in relation to a domestic dispute.

2. Upon showing up to the examination, Dr. Lefkowitz allowed *Dr. Drosdeck* to examine him based on the misrepresentation that she, too, was permitted to practice forensic psychology in Ohio.

3. Dr. Ackerman took Dr. Drosdeck's work as his own, and sold it to Dr. Darnell, who accepted it based on Dr. Ackerman's credentials, which the Court infers are superior to those of Dr. Drosdeck.

4. Dr. Ackerman and Dr. Darnell submitted a joint report in the domestic dispute that contained the misrepresentation that Dr. Ackerman performed his own work.

5. The joint report, based in part on Dr. Ackerman's misrepresentations which lent undeserved clout to the findings, convinced the magistrate to make a decision that was adverse to Dr. Lefkowitz.

Plaintiff's negligence and negligent hiring and supervision claims follow a similar track, adding at step two the allegation that Defendants failed to conduct the examination of Plaintiff in accordance with the applicable standard of care by conducting a Rorschach Test, which was the result of Dr. Ackerman's failure to properly hire, train and supervise Dr. Drosdeck. (Doc. 10 at 19.)

---

[2] The parties focus on statute of limitations and economic loss issues related to Plaintiff's negligence claims. Because the Court finds that Plaintiff lacks proximate cause for all of his claims, it does not reach these issues.

[3] The guardian *ad litem* may have played a role in these steps as well. Because the record is not clear on this point, the Court views the facts in the light most favorable to Plaintiff and does not consider any role played by the guardian *ad litem.*

This chain of causation is too remote to allow Plaintiff's claims to survive judgment on the pleadings. Assessing the first *Holmes* factor, it is all but impossible to determine, with this set of facts, the amount of harm to Plaintiff attributable to a licensure misrepresentation or a Rorschach Test, as distinct from other factors. First, there are at least two independent actors who contributed to the adverse decision of the magistrate judge: Dr. Darnall, who signed on to Dr. Ackerman's/Dr. Drosdeck's findings, and the magistrate judge herself. *See City of Cleveland*, 615 F.3d at 505 (failure at step one involves independent actors). Each of these actors assessed Dr. Ackerman's/Dr. Drosdeck's findings independently along with other criteria: in Dr. Darnall's case, his own testing; in the magistrate's case, the entire seven-day trial and evidence submitted therein (including, among other evidence, testimony from each of the doctors involved as well as both parties), the recommendation of the guardian *ad litem* and the report of a third, court-appointed, forensic psychologist. Second, it is impossible to tease out the effect, if any, of the alleged sub-par testing (the Rorschach Test) on either Dr. Ackerman's report, on Dr. Darnall's signing on to that report, or on the magistrate assessment of the joint report. *See Holmes*, 503 U.S. at 269; *City of Cleveland*, 615 F.3d at 505 ("the remote connection between the alleged misconduct and the alleged injury makes it impossible 'to ascertain the amount of [Plaintiff's] damages attributable to the violation.").

There is no danger of multiple recoveries raised by this case, so the second *Holmes* factor is not applicable. This does not change the calculus, however. *See Anza*, 547 U.S. at 459 (affirming dismissal of complaint for failure to allege properly proximate cause despite inapplicability of second *Holmes* factor).

As to the third *Holmes* factor, "more immediate victims" can address Defendants' violations. *City of Cleveland*, 615 F.3d at 506. The Board can address Dr. Ackerman's misuse

of his temporary license to practice in Ohio, and the magistrate can address any abuse of the judicial process caused by a misrepresentation to the court. *See Holmes*, 503 U.S. at 274; *Anza*, 547 U.S. at 459, *Hemi Group, LLC*, 559 U.S. at 9-10; *City of Cleveland*, 615 F.3d at 506.

As the Supreme Court has made clear in the area of proximate cause, "[t]he general tendency of the law, in regard to damages at least, is not to go beyond the first step." *Hemi Group, LLC*, 559 U.S. at 10. Because Plaintiff's theory requires the Court to "move well beyond the first step, that theory cannot meet [the] direct relationship requirement." *Id. See also Anza*, 547 U.S. at 459 ("The attenuated connection between Ideal's injury and the Anzas' injurious conduct thus implicates fundamental concerns expressed in *Holmes*."); *BAC Home Loans Servicing, L.P. v. Tabac*, 2013 -Ohio- 5582, ¶ 17 (Ohio App. 8 Dist. 2013) (affirming grant of summary judgment in a lender dispute based on lack of proximate cause because "[t]he existence of . . . myriad independent and intervening factors preclude a causal connection between a particular lender's conduct and the value of a specific property.")

Because all of Plaintiff's claims fail sufficiently to allege proximate cause, the Court **GRANTS** Defendants' motion for judgment on the pleadings.[4]

### C. Plaintiff's RICO Claim Also Fails for Lack of a "Pattern" of Racketeering Activity

Showing "a pattern of racketeering activity requires, at a minimum, two acts of racketeering activity within ten years of each other." *Heinrich*, 66 F.3d at 409, citing 18 U.S.C. § 1961(5). But this showing is not sufficient; alleging a pattern of racketeering activity also requires a plaintiff to "show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Telephone Co.*,

---

[4] In light of its ruling on proximate cause, the Court need not reach the parties' arguments regarding numerous other elements of Plaintiff's claims. *See City of Cleveland*, 615 f.3d at 502 ("For the sake of judicial efficiency, we begin, and end, or analysis with the district court's proximate cause ruling.").

12

492 U.S. 229, 239 (1989) (internal quotation omitted). The racketeering predicates are related if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240. The continuity concept may be either closed-ended or open-ended, "referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id*. at 241. The "open-ended" model does not apply to this case, as Plaintiff does not allege or argue that Defendants' scheme projects into the future. Rather, he alleges that conduct during his domestic dispute violated the RICO statute.

While "a closed period of repeated conduct" may satisfy the continuity requirement, it does not do so in this case. To show a closed period of continuity, Plaintiff must allege "a series of related predicates extending over a substantial period of time." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 724–25 (6th Cir. 2006), quoting *H.J., Inc.*, 492 U.S. at 240. In enacting the RICO statute, "Congress was concerned . . . with long-term criminal conduct." *H.J. Inc*., 492 U.S. at 242. Therefore, "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this [continuity] requirement." *Id.*

Here, Plaintiff complains of a "bait-and-switch" scheme whereby Dr. Ackerman lured Plaintiff into submitting to an examination based on his superior credentials, and then sloughed off the work on a colleague who was not licensed to practice forensic psychology in Ohio. He then claimed that his colleague's work was his own, and induced others to rely upon this representation to give the inferior work undue weight. This conduct started in December 2013 with Dr. Ackerman's application to the Board for a temporary Permit to practice forensic psychology in Ohio and ended in February 2014 with the submission of the joint report. (Doc. 1 at ¶ 50). In total, Plaintiff alleges predicate acts spanning just over two months. There are no

13

allegations or suggestions that the "bait-and-switch" scheme is part of Defendants' ongoing business or that it will continue into the future. Therefore, it does not meet the continuity prong of the "pattern" requirement. *See Moon*, 465 F.3d 719, 724-25 (predicate acts over nine months, or even two and one-half years, did not satisfy the closed period continuity requirement); *Vemco, Inc. v. Camardella,* 23 F.3d 129, 134 (6th Cir. 1994), *cert. denied,* 513 U.S. 1017 (1994) (predicate acts spanning 17 months failed to satisfy closed period continuity).

## IV.     CONCLUSION

For the above reasons, the Court **GRANTS** Defendant's Motion for Judgment on the Pleadings. (Doc. 7.) This case is **DISMISSED** in its entirety.

**IT IS SO ORDERED.**

                                                   **s/ Algenon L. Marbley**
                                                   **ALGENON L. MARBLEY**
                                                   **UNITED STATES DISTRICT JUDGE**

**DATED: September 25, 2017**